1  Willie E. Phillips, #56009
   LAW OFFICE OF WILLIE E. PHILLIPS
2  484 Lake Park Avenue, #335
   Oakland, CA 94610
3

4  Tel: (510) 451-2222
   Fax: (510) 451-2235
5

6

7  Attorney for Appellant/Creditor/Plaintiff Cherie Ivey

8              UNITED STATES BANKRUPTCY COURT
9       NORTHERN DISTRICT OF CALIFORNIA (San Francisco)

10
   | In Re: | Civil No.:  CV 07-04333PJH |
11 
   PROS RIVERA,
12 
              Debtor,
13 

14 | CHERIE IVEY, | Bankruptcy No: 05-32090 TEC |
15               Plaintiff,  | Adversary Proceeding No: 05-3441 |

16 vs.

17 PROS RIVERA,

18              Defendant.

19

20

21

22              **APPELLANT'S OPENING BRIEF**

23

24

25

26

27

28

29

30

1

**TABLE OF CONTENTS**

2    I.   **STATEMENT OF THE BASIS OF APPELLATE JURISDICTION**

3

4    II.  **STATEMENT ISSUES PRESENTED ON APPEAL**

5

6    III. **APPLICABLE STANDARD OF APPELLATE REVIEW**

7

8    IV.  **FACTUAL BACKGROUND OF THE DEBTOR'S BANKRUPTCY CASE**

9

10   V.   **PROCEDURAL BACKGROUND OF THE APPELLANT/PLANTIFF'S CLAIMS**

11        **AND LAWSUITS AGAINST THE DEBTOR/APPELLEE**

12

13   **VI. ARGUMENT**

1.  Judge Thomas E. Carlson abused his discretion when he refused to allow Plaintiff's
    Attorney to address the Court to request a written Finding of Fact and Conclusions of Law
    after he made his oral Ruling Granting a Discharge to the Defendant/Debtor Pros Rivera

2.  Judge Carlson erred and abused his discretion in not considering the evidence and
    Ruling there was no fraud and allowing a Discharge of the Debtor when the undisputed
    testimony and documentary evidence in the form of a Deed of Trust signed by the Debtor
    attested that he held title as "Pros Rivera, a married man as his sole and separate property"
    to 637 Sandy Hook Ct., Foster City, CA 94404 and later argued and confessed that he was
    only a fifty (50%) percent owner with his wife which resulted in more than a $150,000.00
    loss to the Plaintiff who was beneficiary of the Deed.

3.  Judge Carlson erred and abused his discretion when he ruled there was nor fraud and
    allowed a Discharge when the testimony of the Defendant/Debtor and documentary
    evidence verified that the Debtor/Defendant set up Nevada Corporations that were never
    capitalized, did business in California without registering as a foreign Corporation, solicited
    money from the Plaintiff for real estate projects that did not exist, and the money solicited
    was used by him personally and none of it used for any projects.

4.  Judge Carlson erred and abused his discretion when he ruled there was no fraud and
    allowed a Discharge of the Defendant/Debtor, who was the President of the sham
    Corporations, and who testified that he had more than seventeen (17) years experience as a
    Real Estate Agent or Broker and many years experience managing Development Companies
    and misrepresented facts to take a few Hundred Thousand Dollars from the Plaintiff, who
    has been a Principal of an Oakland Public School.

**VII.    CONCLUSION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

**TABLE OF AUTHORITIES**

**FEDERAL STATUTES**

11 U.S.C. § 101, et seq      4

28 U.S.C. § 158 (a) (1)      4

28 U.S.C. § 158 (c) (1)      4

11 U.S.C. § 523 (a) (2) (A)      9, 15, 17

**RULES**

F.R.B.P. Rule 800 I (e)      4

Bankruptcy Rule 523 (a) (2) (A)      13

**FEDERAL CASES**

In re: Markovich, 207 B.R. 909,      5

911 (B.A.P 9th Cir. 1997)      5

Beauchamp v. Hoose (In re Beauchamp)

236 B. R. 727, 729 (9th cir. BA.P. 1999)      5

In re Slyman, 234, F.38 1081,

1085 (9th Cir. 2000)      9

**STATE CASES**

California Corporations Code

§ 2105 (a)      14

### I.  STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

Subject matter jurisdiction in the Bankruptcy Court was based on the filing of a case under the Bankruptcy Code. 11 U.S.C. 101, *et seq*

Jurisdiction is this Court is proper under 28 U.S.C. 158 (a) (1) (jurisdiction of the District Courts over final judgments, orders, and decrees of bankruptcy judges.)

Appellant elected to have the within appeal heard by the District Court pursuant to 28 U.S.C. Section 158 (c) (1) and FRBP Rule 8001(e).

Appellant's Notice of Appeal from the Order of the Bankruptcy Court was filed.

### II.  STATEMENT ON ISSUES PRESENTED ON APPEAL

1.  Did Judge Thomas E. Carlson abuse his discretion when he refused to allow Plaintiff's Attorney to address the Court to request a written Finding of Fact and Conclusion of Law after he made his oral Ruling Granting a Discharge to the Defendant/Debtor Pros Rivera?

2.  Did Judge Carlson error and abuse his discretion in no considering the evidence and Ruling there was no fraud and allowing a Discharge of the Debtor when the undisputed testimony and documentary evidence in the form of a Deed of Trust signed by the Debtor attested that he held title as "Pros Rivera, a married man as his sole and separate property'" to 637 Sandy Hook Ct., Foster City, CA 94404 and later argued and confessed that he was only a fifty (50%) percent owner with his wife which resulted in more than a $150,000.00 loss to the Plaintiff who was beneficiary of the Deed?

3.  Did Judge Carlson error and abuse his discretion when he ruled there was no fraud and allowed a Discharge when the testimony of the Defendant/Debtor and documentary evidence verified that the Debtor/Defendant set up Nevada Corporations that were never capitalized, did business in California without registering as a foreign Corporation, solicited money from the Plaintiff for Real Estate projects that did not exist, and the money solicited was used by him personally and none of it used for any project?

4.  Did Judge Carlson error and abuse his discretion when he ruled there was no fraud and allowed a Discharge of the Defendant/Debtor, who was the President of the sham Corporations and who testified that the had more than seventeen (17) years experience as a Real Estate or Broker and many years experience managing Development Companies and misrepresented

facts to take a few Hundred Thousand Dollars from the Plaintiff, who has been a Principal of an Oakland Public School?

## III. APPLICABLE STANDARD OF APPELLATE REVIEW

The District Court reviews the Bankruptcy Court's findings of fact for clear error and the Court's conclusions of law *de novo*. See *In re Markovich*, 207 B.R. 909, 911 (B.A.P 9th Cir. 1997).

A factual finding is clearly erroneous if the appellate Court, after reviewing the record, has a definite conviction that a mistake has been made. *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 729 (9th Cir. B.A.P. 1999). Findings of fact based on credibility are given particular deference by reviewing courts. Id at 730. Mixed questions of fact and law are reviewed *de novo*, *Id*.

## IV. FACTUAL BACKGROUND OF THE DEBTOR'S BANKRUPTCY CASE

The Defendant Pros Rivera was President and sole shareholder of Titan Endeavors, Inc. Titan Endeavors, Inc. was incorporated in the State of Nevada on April 17, 2003 under Corporate Number C9173-2003. The incorporators were Jerry Diggs and Marilyn Howard. The company was authorized for 75,000 shares of stock. The corporation apparently did not issue any shares of stock to capitalize the corporation. As of June 10, 2007, there were "No stock records found for this company". The address used by the incorporation was 2533 North Carson Street, Carson City, Nevada. This is the address of Laughlin & Associates, the agent for service of process for Titan Endeavors, Inc. There is no other address shown on the record for Titan Endeavors, Inc. nor its incorporation Officers from the date of Incorporation to the present.

Pros Rivera entered on 5/9/2003 into an Employment Agreement with Stock Options for a three (3) year period for a monthly salary of $5,000.00 the first year, $7,250.00 the second year, and $10,000.00 per month the third (3) year as Chief Executive Officer plus 5,000,000 shares of stock.(Trial Exhibit No. 3)

The Addendum dated 1/1/2004 increased his monthly payment as Chief Executive Officer (CEO) to $50,000.00 per month and another five million shares of stock with a par value of $1.00 per share. Pros Rivera never paid any money for share of stock. Titan

1    Endeavors, Inc. was only authorized to issue 75,000 share of stock when incorporated on

2    4/17/2003 and that was never changed with the Secretary of the State of Nevada.

3        The Plaintiff gave to the Defendant $150,000.00 on January 27, 2005 in exchange for

4    an Agreement to pay $300,000.00 in thirty (30) days on February 26, 2005 from Escrow

5    Number 54111644-501 JR held at Commonwealth Land Title company, located at 530 El

6    Camino Real, Suite A, San Carlos, CA 94070 for property being purchased by the Debtor

7    which was located at 1309 & 1355 El Camino Real, Millbrae, CA 94030. In addition, the

8    Defendant promised and agreed to build condominiums on land to be purchased in this Escrow

9    that was to close February 26, 2005 at Commonwealth Land Title Company. The

10   Condominiums were to be built on the site in eight (8) months. Two (2) condominiums valued

11   at $899,000.00 each were to be transferred to Plaintiff.

12       The Defendant further agreed to guarantee the repayment of the $300,000.00 in thirty

13   (30) days by signing a Note in the amount of $300,000.00 secured by a deed of Trust against

14   his property located at 637 Sandy Hook, Foster City, California, County of San Mateo, payable

15   on February 26, 2005.

16       The Defendant Pros Rivera testified during his deposition on May 22, 2007 that the

17   verbal agreement was for a Note for $300,000.00 payable in thirty (30) days.

18       The Defendant failed to payoff the $300,000.00 on February 26, 2005 as agreed. Pros

19   Rivera knew at the time he signed the Note and Deed of Trust that he did not have the intent or

20   ability to pay off the $300,000.00 in thirty (30) days from neither the sale of or refinance of the

21   Foster City, property nor he closure of the Commonwealth Land Title Company Escrow that

22   was specified in the Agreement with the Plaintiff.

23       The Defendant further failed to close the Escrow opened at the Commonwealth Land

24   Title Company and develop a condominium project, nor transfer of the two (2) $899,000.00

25   condominiums to the Plaintiff as agreed.

26       After obtaining the money investment on or about January 27, 2005, the Plaintiff was

27   again approached by the Defendant and his associates to invest in another project. On February

28   24, 2005 The Defendant and his associate contacted the Plaintiff with another investment

29   proposal and received $175,000.00 from the Plaintiff.

30

1  Plaintiff was told that the Defendant through his company Titan Endeavors, Inc. was the
2  owner and developer of an 860 unit condominium development project in Oakland, California
3  and needed investment money immediately. The Plaintiff was promised "the amount of
4  $175,000.00 (One Hundred and Seventy-Five Thousand Dollars) as a first payment installment
5  to be received within 30 (Thirty) days of close of Escrow related to a condominium project a
6  1300 El Camino Real, Millbrae, California, under which Titan Endeavors is an owner and
7  developer." This Escrow never closed. There is o evidence that there was ever any ownership
8  interest in such a project. The Plaintiff was promised reimbursement of at least her $175,000.00
9  in thirty (30) days from the date of her investment, plus $100,000.00 from the Escrow held by
10 Commonwealth Title Land Company under Escrow Number 5411644-501 JR. This did not
11 take place. The promises were fraudulent when it was made.

12  Other promises were made by the Defendant and his associates, including payment of
13 $5,000,000.00 with payments commencing not later than six (6) months after the initial
14 payment due date of thirty (30) days after the initial investment nor the payment that became
15 due six (6) months later were ever made. There was never any intent to make these payments.

16  The Defendant and his associates continued to approach the Plaintiff with other
17 investment documents created by the Defendant seeking more money. No further investments
18 were made by the Plaintiff. Defendant through is associates discontinued contacting the
19 Plaintiff after she refused to invest further money with them.

20  On July 5, 2005 the Debtor Pros Rivera, Defendant herein filed a Chapter 11 Petition in
21 the United States Bankruptcy Court for the Northern District in San Francisco, California. He
22 intentionally failed to list this Plaintiff as a Creditor. The Defendant, Debtor herein furthermore
23 in the Bankruptcy Petition listed an incorrect residential address. His First Meeting of Creditors
24 took place on August 9, 2005. The Plaintiff was still unaware of the Chapter 11 being filed. It
25 appears that some of the creditors that appeared at the First Meeting informed the U.S. Trustee
26 of some of the misinformation in the Petition and the Schedules and the Debtor's failure to list
27 certain creditors.

28  The Plaintiff's attorney discovered that the Debtor Pros Rivera, Defendant herein, had
29 filed a Chapter 11. The Debtor was apparently told to amend his Schedules to include all
30 creditors. Even tough the Debtor testified under oath that he had listed all his creditors, the

Plaintiff herein was never received Notice of the Bankruptcy filing from the Debtor, nor notice of being added as a Creditor in the Schedules. The Plaintiff's Attorney discovered that the last day to file a Complaint to Determine Discharge ability of Certain Debts to be October 11, 2005. Because of the blatant fraud and misrepresentations, the Creditor Cherie Ivey, the Plaintiff herein, filed this Complaint.

## V. PROCEDURAL BACKGROUND OF THE APPELLANT/PLAINTIFF'S CLAIMS AND LAWSUITS AGAINST THE DEBTOR/APPELLEE

The Debtor Pros Rivera filed a Voluntary Chapter 11 Petition on July 5, 2005. The Schedules failed to include the name and the Debt owed to the Creditor Cherie Ivey, the Plaintiff herein and failed to list her Secured and Unsecured Claim. Cherie Ivey held a Secured Claim against his residence located at 637 Sandy Hook, Foster City, CA in the amount of $300,000.00 evidenced by a Note and Deed of Trust recorded against the property. Cherie Ivey also was owed an additional $175,000.00 evidenced by a Written Contract. Neither was listed in the Debtor's Schedules.

The Secured Claim of Cherie Ivey was discovered during the Administration of the Bankruptcy Estate and Cherie Ivey was notified that the Debtor Pros Rivera had filed a Bankruptcy.

The Plaintiff's Unsecured Claim for the contract amount of $2,098,000.00 was filed on October 4, 2005 as General Unsecured Claim No. 9.

The Plaintiff had a Secured Claim against the Debtor's real property located in Foster City, CA so a Secured Claim of $313,069.80, including interest through July 4, 2005, was filed on October 4, 2005 as Secured Claim No. 10. The Real property in Foster City was sold through this Bankruptcy proceeding.

At the close of Escrow, the Plaintiff was owed $313,069.00, but received $78, 176.84. The Court allowed the Plaintiff to file an Amendment to the Secured Claim No. 10 as an Unsecured Claim for the balance due to the Plaintiff after the sale of the Foster City property. An Amended Unsecured Priority Claim No. 10 in the amount of $234,892.16 has been filed.

The Plaintiff Cherie Ivey submitted a Claim for the Contract amount of $175,000.00 on October 6, 2005 as General Unsecured Claim No. 11. An Amended Unsecured Priority Claim No. 11 in the same amount of $175,000.00 has been filed.

1    The Plaintiff submitted an Amendment to the General Unsecured Claim No. 9 and filed

2 on October 11, 2005 General Unsecured Claim No. 13 in the amount of $150,000.00.

3    On October 11, 2005 a Complaint was filed in behalf of Plaintiff Cherie Ivey against

4 Debtor Pros Rivera, under Adversary Case Number 05-03441 seeking to Deny the Discharge of

5 the Debtor owed to the Plaintiff under 11 U.S.C. 523 (a)(2)(A).

6                                         **VI. ARGUMENT**

7    **A.  Judge Thomas E. Carlson abused his discretion when he refused to allow**

8  **Plaintiff's Attorney to address the Court to request a written Finding of Fact and**

9  **Conclusions of Law after he made his oral Ruling Granting a Discharge to the**

10  **Defendant/Debtor Pros Rivera.**

11    At the end of a one (1) day Trial, Judge Thomas e. Carlson stated that the parties and

12 their legal counsel should wait and he would give a ruling (Trial Transcript, p 160, 24-25; p

13 161, 1-12).

14    The   Appellant/Plaintiff   Cherie   Ivey   brought   the   Complaint   against   the

15 Appellee/Defendant Pros Rivera for fraud under Bankruptcy Code § 523 (a) (2) (A).  As has

16 been interpreted in this Ninth Circuit, the Plaintiff must demonstrate "1) a misrepresentation,

17 fraudulent omission or deceptive conduct by the Debtor; 2) knowledge of the falsity or

18 deceptiveness of [his] statement or conduct; 3) an intent to deceive 4) justifiable reliance by the

19 creditor on the Debtor's statement or conduct; and 5) damage to the creditor proximately

20 caused by [their] reliance on the Debtor's statement or conduct." *In re Slyman*, 234 F.38 1081,

21 1085 (9th Cir. 2000). The undisputed facts indicate such fraudulent conduct."

22    The Defendant Pros Rivera received money from the Plaintiff which he secured by his

23 real property by a $300,000.00 Deed of Trust on property held by him as "Pros Rivera, a

24 married man as his sale and separate property" (Deposition of Pros Rivera, May 22, 2007,

25 Exhibit No. 7). Defendant Pros Rivera and his associates also solicited money from the Plaintiff

26 in the amount of $175,000.00 for another project which was later determined by documentary

27 evidence and the testimony of the Defendant to be a non-existent project.

28    Judge Carlson stated when he stated his ruling, that "There are five elements that must

29 be --depending on how you break the up --that have to be established under 523 (a) (2) (A) to

30 establish the non-dischargeability of an obligation based on fraud." (Trial Transcript, p 161, 19-

22). The Judge further stated "new for--, I don't need to make findings under all of these

1  sections. I'm going to find for the Defendant here, and the transaction breaks down in a couple
2  different ways, into two basic sections. The most interesting and difficult part has to do with the
3  Deed of Trust, and then the amount that might have been paid through the Deed of Trust, and
4  then the second one has to do with other methods of repayment, other promises to repay."
5  (Trial Transcript, p 161, 9-16)

6            After some further rambling that did not speak to the evidence regarding the many years
7  of real estate management experience, and educational background of the Debtor/Defendant
8  who was accused of fraud, Judge Carlson states, "I will do the Judgment. I will just incorporate
9  those finding." (Trial Transcript, p 168, 14-15).

10           At the end of Judge Carlson's rambling ruling that did not refer to the actions, evidence,
11 or testimony of the Debtor/Defendant, there was some comment that "The question is whether
12 the representations about what the investment would be and what the return would be, she was
13 not justifiably – couldn't justifiably rely on it, okay?" (Trial Transcripts, p 168, 24-25 and p.
14 169, 1-2). Following this statement by Judge Carlson, the following exchange occurred,
15 including the Defendants Attorney Kuhner, Plaintiff's Attorney Phillips, and the Judge:

16 "MR. KUHNER: There's no finding one way or the other.

17 THE COURT:       I'm not making any finding about his intent or Mr. Diggs' intent, except
18 with respect to that Deed of Trust issue.

19 MR. PHILLIPS: May I comment?

20 THE COURT: Because you have to make all five elements, and if you miss one, than you
21 don't win.

22 MR. PHILLIPS: May I comment?

23 THE COURT: No

24 MR. PHILLIPS: Okay.

25 THE COURT: You had – that was what argument was for. Thank you.

26 THE CLERK: All rise.

27 (Whereupon the proceeding was concluded at 3:58 p.m.)" (Trial Transcript, p, 169, 3-17).
28 Judge state that he would "do the judgment; I will just incorporate these findings." (Trial
29 Transcript p 168, 14-15). The Judge did not. The Defendant's Attorney Kuhner stated that
30 "There's no finding one way or the other." The Judge states that there was no finding,"…
   except with respect to the Deed of Trust issue." (Trial Transcript p. 169, 3-7). No Finding of

1   Fact nor Conclusion of Law were included in the Judgment After the Trial that was dated and
2   Entered on August 7, 2007 in this case. Judge Carlson erred in not allowing Attorney Phillips to
3   address the Court to make a formal request for Written Finding of Fact and Conclusions of
4   Law. The Judge erred in failing to make findings as he admitted as quoted above. This
5   Appellate Court should therefore review the evidence and Testimony and make an independent
6   finding that the Defendant's should not be granted a Discharge as to the unpaid money owed to
7   the Appellant/Plaintiff Cherie Ivey.

8       **B.      Judge Carlson erred and abused his discretion in not considering the**
9   **evidence and Ruling there was no fraud and allowing a Discharge of the Debtor when**
10  **the undisputed testimony and documentary evidence in the form of a Deed of Trust**
11  **signed by the Debtor attested that he held title as "Pros Rivera, a married man as his**
12  **sole and separate property" to 637 Sandy Hook Ct., Foster City, CA 94404 and later**
13  **argued and confessed that he was only a fifty (50%) percent owner with his wife which**
14  **resulted in more than a $150,000.00 loss to the Plaintiff who was beneficiary of the**
    **Deed.**

15  The Defendant/Debtor Pros Rivera acknowledged that he and his associates approached the
16  Plaintiff/Creditor Cherie Ivey in December 2004 and January 2005 soliciting $150,000.00 for a
17  development project in Millbrae., California. The Defendant Pros Rivera and his associate Jerry
18  Diggs expressed and urgency and a business opportunity for the Plaintiff Cherie Ivey. They
19  expressed a short term need for $150,000.00 for approximately thirty (30) days. To entice the
20  Plaintiff Cherie Ivey into entering into the $150,000.00 investment, the Plaintiff was offered a
21  guarantee of $300,000.00 to be paid to her in thirty (30) days. Concerns were still raised by the
22  Plaintiff Cherie Ivey. To lure her into the transaction the Defendant/Debtor agreed to secure the
23  $300,000.00 for the thirty (30) day period with property of which he was the "sole owner". The
24  Debtor Pros Rivera also offered to also give the Plaintiff two (2) condominiums valued at
25  $899,000.00 each for a total of $1,798,000.00 at the completion of the project in approximately
26  eight (8) months.

27      Because of the above assurances and promises, the Plaintiff Cherie Ivey agreed to
28  advance the $150,000.00. On January 27, 2005 the Defendant Pros Rivera and his associate
29  Jerry Diggs and Plaintiff Cherie Ivey met at the Fruitvale office location of Bank of America.
30  The Defendant Pros Rivera provided the Plaintiff Cherie Ivey with "Note secured by Deed of

1  Trust" dated January 26, 2005 in the amount of $300,000.00 payable on February 26, 2005 and
2  secured by his property located at 637 Sandy Hook Ct., Foster City, CA 94404. (June 26, 2007
3  Trial Exhibit No. 6). The Defendant also provided at that meeting at Bank of America a Deed
4  of Trust secured by property located at 637 Sandy Hook Ct., Foster City, CA 94404, which
5  shows ownership as "Pros Robert Rivera, a married man as his sole and separate property" and
6  was notarized with his signature. (June 26, 2007 Trial Exhibit No. 7).
7        In addition to the above-referenced Noted and Deed of Trust, the Defendant Pros Rivera
8  signed before a Notary on January 27, 2005 a "Memorandum of Agreement" verifying the
9  $300,000.00 would be paid and two (2) condominiums with a; market value of $899,000.00
10  would be conveyed to the Plaintiff Cherie Ivey when the development was completed (June 26,
11  2007 Trial Exhibit No. 8).
12        The Plaintiff was also given other documentation to verify the existence of the Nevada
13  Corporation Titan Endeavors, Inc, its' officers, and "Pros Rivera, as CEO/President" as of May
14  30, 2003 (June 26, 2007 Trial Exhibit No. 9). Of great importance the Plaintiff also provided
15  proof of a Escrow No. 54111644-501 JR dated December 22, 2004 being open at
16  Commonwealth Land and Title Company in San Carlos, California with an "Estimated"
17  Buyer/Borrowers Closing Statement with "Pros Rivera" listed a "Buyer/Borrower" of the
18  property located at 1309 and 1355 El Camino Real, Millbrae, CA 94030 with Escrow amount
   listed as $17,575.000.00 (Trial Exhibit No. 10).
19        His Trial testimony disclosed that he did not put any money into the Escrow of his own
20  nor the Plaintiff's money. The Escrow was a show to solicit the money. The Defendant also
21  provided a Powerhouse Mortgage and Funding Co. LLC letter dated November 17, 2004
22  verifying an offer to purchaser and sale of the property and financing terms and others Trial
23  Exhibits No. 7, 12, and 13) The Defendant did not follow up on this project nor invested any
24  money. The purpose of all of the information provided including stating that the Foster City
25  property was his "sole and separate property," was to defraud the Plaintiff Cherie Ivey out of
26  her money.
27        The Plaintiff was duped by the Defendant Pros Rivera and his Associates on January
28  27, 2005 and gave Defendant Pros Rivera a Bank of America Cashiers Check No. 410548332
29  in the amount of $150,000.00 (Trial Exhibit No. 14).  The Defendant Pros Rivera failed to
30  make mortgage payments on the Foster City property that secured the Plaintiff Cherie Ivey's

1   $300,000.00 Note and Deed of Trust and failed to pay off the Note on February 26, 2005 when
2   it became due. The Defendant/Debtor filed a Chapter 11 Bankruptcy on July 5, 2005, but failed
3   to list the Plaintiff Cherie Ivey as a Creditor.

4     The Debtor Pros Rivera's Chapter 11 was converted to a Chapter 7. The Chapter 7
5   Trustee did not believe that there was enough equity to sell the Foster City property. The
6   Creditor/Plaintiff Cherie Ivey was forced to negotiate with the Chapter 7 Trustee to split the
7   equity to be realized from a sale of the Foster City property by the Chapter 7 Trustee applied to
8   the Bankruptcy for an Amended Order Authorizing Chapter 7 Trustee's Sale of Real Property
9   Free and Clear of Liens which was Entered on May 22, 2206. The Order gave sixty (60%)
10  percent of the net Sales Proceeds to Plaintiff Cherie Ivey and forty (40%) percent to the
    Chapter 7 Estate (Trial Exhibit No. 27).

11    This same Order referenced the fifty (50%) Claim of Interest of the wife of the Debtor
12  Pros Rivera. Even though the $300,000.00 Deed of Trust that was given to Plaintiff Cherie Ivey
13  stated that Defendant Pros Rivera held title to the Foster City property as "a married man as his
14  sole and separate property", the made the Motion in Bankruptcy Court insisting that his wife
15  Erlinda T. Rivera had a fifty (50%) percent. She did not make the Motion the Debtor did. The
16  Court ruled in favor of her fifty (50%) interest as recognized in the Courts May 22, 2006
17  Bankruptcy Court Order (Trial Exhibit No. 27).   The Deed of Trust given by the
18  Defendant/Debtor Pros Rivera on January 27, 2005 to Plaintiff Cherie Ivey fraudulently
19  asserted a one Hundred (100%) percent ownership interest, not fifty (50%) percent interest. The
20  unpaid balance should be ruled a Non-dischargeable amount under Bankruptcy Rule 523 (a) (2)
21  (A).

22    The sale of the Foster City property of the Debtor/Defendant Pros Rivera in the
23  Bankruptcy proceeding produced $296,903.04 based on the Seller Estimated Closing Statement
24  dated May 22, 2006. (Trial Exhibit No. 28). The Debtor/Defendant had given the
25  Plaintiff/Creditor a $300,000.00 Deed of Trust which should have been paid almost in full from
26  these proceeds but for the Debtor's fraudulent claim in the Deed. As a result, the Debtor's wife
27  received $146,135.90 which went to the Debtor.

28    Because of the "60-40" split between Ms. Ivey and the Chapter 7 Trustee "as per the
29  Court Order entered May 22, 2006 (Trial Exhibit No. 27) Ms. Ivey was to receive $87,681.54.
30  This was reduced by the sum of $9,504.58 due to Title Company error. She paid this amount

back to the Title Company as requested (Trial Exhibit No. 28). The Plaintiff/Creditor Cherie Ivey only received from the sale of Foster City the sum of $78,176.96. The balance that was to paid of the Plaintiff Cherie Ivey's Claim of $313,069.80 was allowed to be submitted as an Unsecured Claim pursuant to the May 22, 2006 Order of the Bankruptcy Court (Trial Exhibit No. 28).

      C.        **Judge Carlson erred and abused his discretion when he ruled there was nor fraud and allowed a Discharge when the testimony of the Defendant/Debtor and documentary evidence verified that the Debtor/Defendant set up Nevada Corporations that were never capitalized, did business in California without registering as a foreign Corporation, solicited money from the Plaintiff for real estate projects that did not exist, and the money solicited was used by him personally and none of it used for any projects.**

      Titan Endeavors, Inc. was incorporated on April 17, 2003 in the State of Nevada (Trial Exhibit No. 1) with Jerry Diggs as Chairman, Pros Rivera, CEO/President and Rachel K. Brennan as Secretary. Pursuant to the signed Minutes Pros Rivera was given 250,000 shares of stock per certificate #1. A review of the records of public access records of the secretary of State for the State of Nevada under Titan Endeavors, Inc. on June 10, 2007 revealed that the Corporation was authorized for only "75,000 No Par Shares" and it showed the "capital amount -$0" (Trial Exhibit No 2).

      The Debtor entered in an "Employment Agreement with stock options" that was signed by the Debtor Prose Rivera on May 9, 2003 (Trial Exhibit No. 3). Stock, Salary and duties were discussed.

      Titan Endeavors, Inc. did business in California without registering as a foreign corporation. Under California Corporations Code section 2105 (a) "A foreign corporation shall not transact interstate business without having first obtained from the Secretary of State a certificate of qualification. The testimony and evidence clearly shows that Titan Endeavors, Inc. never registered the corporation in California. The Debtor Pros Rivera as President is therefore individually and personally liable to the Plaintiff. He has testified that he is the sole shareholder.

      Titan Endeavors, Inc. and Debtor Pros Rivera solicited money from the Plaintiff for Real Estate projects that did not exist. The testimony of the Defendant Pros Rivera clearly

states that he personally nor Titan Endeavors, Inc. put any money into the escrow held at Commonwealth Land Title.

The money solicited by the Debtor Pros Rivera from the Appellant/Creditor Cherie Ivey was used by him and his associates personally and none used for any projects. This was the testimony of the Debtor Pros Rivera in open Court.

Judge Carlson had a verbal exchange regarding the issue of the need to pierce the Corporate veil to find the Debtor/Defendant personally liable under 11 U.S.C. § 523 (a) (2) (A). Judge Carlson ruled as follows:

"THE COURT: You don't have to prove that – you don't have to pierce the corporate veil to prevail here. What you have to do is prove all the elements of 523 (a) (2). Okay? (Trial Transcript, p. 13, 17-20)"

In response to the Court's Ruling, Attorney Kuhner and Attorney Phillips Stipulated to this. (Trial Transcript, p.13-21-25). The Court determined this to be a Motion in limine which was granted by Stipulation. (Trial Transcript, p. 14, 1-2).

The Debtor Pros Rivera testified in the trial that none of the $150,000.00 received from Cherie Ivey was put into the Escrow for which it was solicited by him from the Plaintiff Cherie Ivey. He testified that he was the only signature on the Bank of America account where the $150,000.00 was deposited and that name of the money went into the escrow at the Commonwealth. (Trial Transcript, p. 43, 2-14.).

When Plaintiff Cherie Ivey met with Defendant Pros Rivera at Bank of America on Fruitvale Avenue in Oakland, CA on January 27, 2007, a packet of information regarding other investment opportunities was provided to her. (Trial Transcript, p. 51, 21-25; and p. 52, 1-14). She was instructed to continue "negotiating or communicating with Jerry Diggs", the Chairman of the Board of Titan Endeavors, Inc. regarding investing in other projects (Trial Transcript, p. 52, 21-25; and p. 53, 1-20).

The Defendant was provided a packet of information to the Plaintiff Cherie Ivey that included an 860 unit development in Oakland, California and a development project in the Philippines. After investing the money regarding the Escrow at the Commonwealth Land Title and the San Mateo County project, Plaintiff Cherie Ivey was asked to invest $175,000.00 in the Oakland project. Between February 25 to March 1, 2005, the Defendant pros Rivera and his associates convinced her to transfer $175,000.00 to Titan Endeavors or its designates.

In February 2005, the Debtor Pros Rivera was out of the country in the Philippines, to review possible investment projects and due to the illness of his mother. During February 25 through March 1, 2005, Titan Endeavors opened a Bank account to receive the $175,000.00 that was solicited as an investment from Plaintiff Cherie Ivey. (Trial Transcript, p. 55, 25; and p. 56, 1-2). None of the money was invested in the project.

1. The money of the Plaintiff was used by the Defendant Pros Rivera to lease luxury cars and to rent expensive property in Hillsborough.

The Defendant leased the expensive property in Hillsborough in his own name on a one year lease and was eventually evicted (Trial Transcript p. 71, 1-17)

In addition, the Debtor Pros Rivera leased an Escalade, Rolls Royce and A Volkswagen SUV. The autos were used to impress investors (Trial Transcript, p. 71, 18-20). The Debtor testified that a Judgment was entered regarding the automobiles in the amount of $102,000.00 against the corporation and the Debtor personally (Trial Transcript, p. 72, 15-25; p. 73, 1-10; Trial Exhibit No. 29).

These cars were used to impress the investors. Plaintiff Cherie Ivey justifiably believed and was a victim of fraud.

**D.  Judge Carlson erred and abused his discretion when he ruled there was no fraud and allowed a Discharge of the Defendant/Debtor, who was the President of the sham Corporations, and who testified that he had more than seventeen (17) years experience as a Real Estate Agent or Broker and many years experience managing Development Companies and misrepresented facts to take a few Hundred Thousand Dollars from the Plaintiff, who has been a Principal of an Oakland Public School.**

The Defendant Pros Rivera, the President of Titan Endeavors, Inc., is an experienced Real Estate Agent, Real Estate Corporate Manager and educated. None of his actins in this transactions were a mistake nor done out of ignorance.

The Defendant Pros Rivera has a Bachelors Degree from De La Salle University and a Masters n Business Administration from Golden gate University. (May 22, 2007 Deposition of Pros Rivera, p. 7, 7). Because of his management experience, the Debtor was made the President and CEO of the Nevada Corporation Titan Endeavors, Inc. on May 30, 2003. (Deposition of Pros Rivera, p. 17, 18-25). As of May 2003 the Debtor had at least ten (10) years experience handling three (3) to 15 real estate transactions a year (Deposition of Pros

Rivera p. 18, 7-17); Trial Transcript, p. 19, 14-20). The Defendant worked in management with Flour engineers (Deposition of Pros Rivera p. 20, 20-22) and other companies.

The Plaintiff at the time was Principal of an Elementary School in Oakland. She had bought only residential properties and was planning to retire she was not an experienced investor.

## VII.    CONCLUSION

The Appellant/Creditor request that this Court Reverse the Bankruptcy Court Judgment. The unpaid Unsecured portion of the $300,000.00 Deed of Trust and the $175,000.00 Unsecured money given to Titan Endeavors, Inc. should bought be determined by this Court to be Non-dischargeable by the Debtor Pros Rivera, the President of Titan Endeavor, Inc. under 11 U.S.C. 563 (a)(2)(A).


Date: December 4, 2007



 /S/ Willie E. Phillips

Willie E. Phillips, Attorney for Appellant Cherie Ivey