CHRIS D. KUHNER, ESQ. (Bar No. 173291)
KORNFIELD, PAUL & NYBERG, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for Defendant/Appellee Pros Rivera

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re** | **Case No. CV 07-4333 PJH** <br> **Bankruptcy Case No. 05-32090 TC** <br> **Adv. Pro. No. 05-3441** |
| **PROS RIVERA,** | |
| Debtor. | |
| **CHERIE IVEY,** | |
| Plaintiff/Appellant, | **APPELLEE'S RESPONSIVE BRIEF** |
| **vs.** | |
| **PROS RIVERA,** | |
| Defendant/Appellee. | |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal arises from a Bankruptcy Court determination that a debt owed to Appellant Cherie Ivey ("Appellant/Plaintiff") by Appellee Pros Rivera ("Appellee/Defendant") was dischargable pursuant to 11 U.S.C. § 523(a)(2)(a). After the evidence was entered at trial, witnesses' testimony and the parties closing arguments, the Honorable Thomas E. Carlson ruled from the bench in favor of the Appellee determining the Appellant's claims were in fact dischargable. Appellant failed to establish the elements of 11 U.S.C. § 523(a)(2)(a). Specifically, the Court ruled that there was no misrepresentation, and/or to the extent there was one, that the Appellant did not justifiably rely on the representations by the Appellee.

Appellee's Responsive Brief

1    The Appellant's brief describes Judge Carlson's ruling as "rambling"(Appellant Opening Brief, page 10, lines 6-15) and is upset that the Court did not issue a written ruling.  The Court's ruling is not rambling, but a reasoned analysis of law and the facts of this case.  Further, the Court issued its ruling from the bench pursuant to Federal Rule Bankruptcy Procedure ("FRBP") 7052 which incorporates Federal Rule of Civil Procedure ("FRCP") 52 which allows for such bench ruling to be the trial Court's findings of fact and conclusions of law.

There is no reversible error present.  Appellee's respectfully requests that this Court confirm the Bankruptcy Court's determination that the debts owed to Appellant are dischargable and award costs to the Appellee.

## II.   JURISDICTION

Jurisdiction of this appeal is based on 28 U.S.C. § 158(a).  Appellant has timely filed her notice of appeal within ten (10) days of the Bankruptcy Court's entry of judgment in favor of the Appellee.

## III.  STATEMENT OF ISSUES PRESENTED

Appellant has set forth this statement of issues presented in his brief and Appellant will not be repeated them again.

## IV.   STANDARD OF REVIEW

The District Court reviews the Bankruptcy Court's findings of fact for clear error and the Court's conclusions of law *de novo*.  <u>In re Markovich</u>, 207 B.R. 909, 911 (B.A.P. 9th Cir. 1997).

A factual finding is clearly erroneous if the appellate Court, after reviewing the record, has a definite conviction that a mistake has been made.  <u>Beauchamp v. Hoose (In re Beauchamp)</u>, 236 B.R. 727, 729 (9th Cir. B.A.P. 1999).  Findings of fact based on credibility are given particular deference by reviewing courts.  Id at 730.  Mixed questions of fact and law are reviewed *de novo, Id.*

## V.    STATEMENT OF THE CASE

On or about April 17, 2003, Titan Endeavors, Inc. ("Titan Endeavors") was incorporated in the State of Nevada.  Titan Endeavors was the brain child of an individual named Jerry Diggs, Jr.

("Diggs")[1].  On or about the time of incorporation, Titan Endeavors offered employment to Rivera. (Trial Transcript ("TT") Page 20; Lines 1-18, Page 24; Lines 1-12).  On May 9, 2003, Rivera executed an Employment Agreement with Stock Options that provided among other things, that he will be employed by Titan Endeavors as Chief Executive Officer with a salary beginning at $5 million and increase to $10 million in year three (3).  In addition, Rivera was issued shares of stock in the company. (TT: Page 21, Lines 1-5; Trial Exhibit ("TE") 3).  To date, Rivera has not received compensation requested in his employment agreement and has ended up investing over $2 million of his own money into Titan Endeavors, only to see those funds embezzled and/or spent by Diggs and his associates.

Although Rivera was named as chief executive officer and a director of Titan Endeavors, his involvement with Titan Endeavors was non managerial and related to locating and acquiring properties in order to develop residential real estate developments for the purpose of selling to the public.  (TT: Page 25; Lines 17-25).

At one point, Diggs needed additional funds to continue his scheme.  He placed an ad in the newspaper requesting $150,000 in exchange for a "ready to build condo project/ $825,000 3 BR debt free unit available."  Apparently, Ivey answered this ad and begin negotiating with Diggs regarding the terms of a loan she would make to Titan Endeavors. (TT: Page 78, Lines 5-25; Page 79, Lines 1-25; Page 80; Lines 1-25).  In January 2005, Ivey and Titan Endeavors discussed an agreement which provided that Ivey loan $150,000 to Titan Endeavors. According to Ivey, within thirty (30) days of the loan, Ivey would be repaid $300,000.  In  addition, when the development was completed, she would be given two (2)  3 bedroom, 2 bathroom condominiums with the market value of $899,000 each for a total of $1,798,000, plus the $300,000 in cash.  Therefore, Ivey was going to receive a 13,000% (TT: Page 115, Lines 19-25; Page 116, Lines 1-25; Page 117, Lines 1-25; Page 118, Lines 1-2) return on her investment[2].

---

[1] Rivera's understanding that Mr. Diggs had previously been convicted of fraud and was subject to several lawsuits for fraud based on his activities regarding Titan Endeavors. Mr. Diggs has since passed away and it is unclear what, if anything, is occurring in any probate estate.

[2] To the extent this was a loan, the terms violate the usury laws of the State of California and would not be enforeable by Ivey.

Kornfield, Paul & Nyberg, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612-3525
(510) 763-1000
FAX (510) 273-8669

1  Although Rivera, on behalf of Titan Endeavors, did sign a document evidencing the
2 agreement along with Diggs as Chairman of Titan Endeavors, <u>there is no signed copy with Ivey's
3 signature on it</u>. Rivera was not involved in negotiating this transaction.

4  Around this time, Ivey hired current counsel, Willie E. Phillips, to represent her in her
5 negotiations regarding the loans to Titan Endeavors. Apparently, she was advised that this loan
6 should be secured which the parties agreed. (TT: Page 122, Lines 1-25) The $150,000 loan (worth
7 $300,000) was secured by Rivera's personal residence and Rivera executing a note and deed of trust
8 in the amount of $300,000 which was to be payable in February 26, 2006. (TT: Page 124, Lines 24-
9 25; Page 125, Lines 1-2) Although Ivey contends that the note was modified to extent the date of
10 maturity, and it appears that the note was in fact modified, this was not modified until after Rivera
11 signed it and he had nothing to do with the modifications. (TT: Page 124, Lines 1-25) It is critical to
12 note that Diggs was doing all the negotiations with Ivey and her counsel, and Rivera simply signed
13 documents. Furthermore, it was at this time that Rivera was emptying out his savings and retirement
14 accounts in the amount of $2 million to finance Titan Endeavors fully believing that the company
15 would be successful in development deals. (TT: Page 140, Lines 4-16)

16  The only time that Rivera ever met Ivey or made any representations to her regarding any
17 facts alleged in the Complaint was in late January 2005 at the Bank of America building lobby in
18 Oakland. The sole communication that Rivera had with Ivey was accepting a check from her for
19 $150,000. At no time, did Rivera represent anything regarding the projects at issue to Ivey. All that
20 negotiations and all representations were made by Diggs, not Rivera. (TT: Page 135, Lines 1-25;
21 Page 136, Lines 1-25; Page 137, Lines 1-15)

22  After hearing all the evidence and reviewing all the relevant documents and deposition
23 transcripts, Judge Carlson issued a ruling finding in favor of the Defendant and against the Plaintiff.
24 The Court concluded that the Plaintiff did not make any misrepresentation of facts as to the deed of
25 trust. Specifically, by titling the deed of trust as "(A) married man as his sole and separate property"
26 the Appellee was conveying to Appellant his ownership interest in the property. This was the only
27 legal and appropriate way to title the deed of trust under the circumstances. Appellee made no
28 representations, expressed or verbal, that he was transferring the entire property. As such, without

Kornfield, Paul & Nyberg, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612-3525
(510) 763-1000
FAX (510) 273-8669

an expressed or verbal representation, there was no misrepresentation. (See Trial Transcript Page 163, Lines 15-24).

In addition, the Court found that the Appellant did not justifiably rely on any statements regarding her investments. Specifically, that those investments would be paid from certain real estate projects. The Court, relying on *Field v. Mans,* 516 U.S. 59, 116 S. Ct. 437 (1995), held that under the circumstances, the Appellant had the obligation to review the terms of the agreement and the bonafides of the transactions and Titan Endeavors. This duty to investigate was triggered due to the extraordinary rate of return of nearly 1,300 % on the loans coupled with the Appellant's level education and experience in real estate. These factors created an obligation for the Appellant to perform due diligence regarding the transactions and Titan Endeavors. If she had performed this due diligence, she would have discovered the problems with the company and the transactions. (See Trial Transcript Page 165, Lines 7-25; Page 166, Lines 1-25; Page 167, Lines 1-25; Page 168, Lines 1-3).

Specifically, the Court made the following relevant findings of facts and conclusions of law on the record:

> "There are five elements that must be - - depending on how you break the up - - that have to be established under 523 (a) (2) (A) to establish the non-dischargeability of an obligation based on fraud. First of all, there has to have been representation of fact. That representation has to have been made - - it has to be false. It has to have been made with the intent to deceive the plaintiff. There must be justifiable reliance, not reasonable but justifiable. I'll go into that shortly, and there has to have been damages resulting therefrom. And the way 523 (a) (2) is set up is basically that you get to recover money or property that has been obtained through this misrepresentation, which in this case would basically limit the recovery to the amounts loaned plus a reasonable rate of interest, not the full contractual promise.
>
> Now, for - - I don't need to make findings under all of these sections.. I'm going to find for the defendant here, and the transaction breaks down in a couple different ways, into two basic sections. The most interesting and difficult part has to do with the deed of trust, and then the amount that might have been paid through the deed of trust, and then the second one has to do with other methods of payment, other promises to repay.
>
> Now as I said, there are five elements. With respect to the deed of trust element, to the extent that the debt - - there was a promise to pay the debt through the deed of trust, there is a possible misrepresentation there, and that possible misrepresentation would be contained in the deed of trust in the words "a married man as his sole and separate property." It conceivably could create - - constitute a representation that the defendant owned the whole property. In fact, the defendant did not own the whole

property. He owned it in some form of joint tenancy. I assume it's just a straight joint tenancy and not tenancy by the entirety.

But that's very, very clear from not only the testimony of the Debtor, but from what happened in the case, as of record in the case. The trustee sold this property as co-owned property. If it was wholly owned by the Debtor as separate property, the trustee could have just sold it directly. If it was community property, the trustee could have sold it directly. If it was wholly the wife's property, the trustee couldn't have sold it at all. So the title - - although we don't have the deed, the title is - - the evidence of title is corroborated by what happened in the case as of record.

Now, as I said, the form used by the defendant to convey this deed of trust, this security interest, could be construed as happening. There is no express representation that it was his sole and separate property. I don't find any evidence, credible evidence of that. The only representation is in the deed of trust itself and it's complicated by the fact that if he only wanted to give an interest in his one-half, he would have used the very same language, because he can only convey his separate interest.

His statement was that he used the language to convey that separate property interest because he had no power to convey his wife's separate property interest, which is legally correct. There's no evidence whatsoever as to Mr. Diggs' intent, whatever extent he was involved in this, that he had any intention to create the impression that the Debtor owned the whole property.

So my finding here is that the evidence does not show that the language in the deed of trust was used intentionally to induce the plaintiff to believe that the defendant owned the entire fee as his sole and separate property, and there's no evidence at all that Mr. Diggs intended to show that. It simply conveyed an interest, what interest he had.

Now, he did do that. And the fact that the interest that was conveyed was not sufficient to pay the full amount of the 150, supposedly secured by this, there was no representation that it was sufficient, and we'll get to stage two of the case in the sense that this is an instance in which, because of the exceptionally high rate of return, the plaintiff was obligated to look at this case a little bit closely when you're being promised so much money, and I don't think you were entitled to assume that the Debtor was representing that the property had any particular value, what the encumbrances were, et cetera.

He gave a deed of trust in his interest to the full extent of the interest he had. It turned out not to be sufficient. The deed of trust, the whole investment, whole note had to look very risky on its face from the exceptional rate of return. Red flags were raised. It wasn't - - you didn't look into the fact of whether there was sufficient collateral really there.

Okay. With respect - - there are many other promises made here. The 150,000 and the 175,000 were obtained through representations of other types, that you would be paid out of the proceeds of these condominium projects. There I think clearly was some sort of representation that the projects were – that this enterprise was attempting to do those projects, and that they would pay you from the proceeds of those projects if they ever sold.

Now, here is where justifiable reliance becomes very important, and justifiable reliance was defined by the Supreme Court in the case of <u>Field v. Mans</u> – I don't have the exact date here – it's at 516 U.S. 59. And what the Court said in <u>Field v. Mans</u>

was that in a case no involving a representation in the financial statement, that one doesn't have to show reasonable reliance, which is a very high standard. One only has to have justifiable reliance. And justifiable reliance means that you don't have a duty to investigate into the background unless there is something that's right in front of you that suggests some risk that you ought to look into.

In other words, you have to be sort of hit in the fact with something that suggests there's a concern here that I should look into, and the Supreme Court gives an example, and it says that even if there – and oh, by the way, one more thing is, that justifiable reliance is what's called a subjective test. It depends on the education and background, experience of the person who has been misled by the misrepresentation.

An I note that you, in this instance, there is sort of a middle category. You are obviously an investment or real estate professional, but you're not uneducated either. You obviously h ave a college degree at least to be a teacher, and you've bought and sold real estate before. You're sort of in the middle category. And so you aren't held to a very, very high standard of knowledge.

And it becomes relevant because of this. What the Supreme Court says is that even a person who doesn't know anything about horses has to know that a horse that only has one eye cannot be justifiably represented to be a sound horse. Whereas in other circumstances, it would take a person with more sophistication to understand a particular misrepresentation. Only a horse expert would know that a horse that has kind of long teeth can't be property viewed as a young horse. Those are their examples, not mine.

The point is, one has to look at the particular facts and the particular background of the plaintiff. Now, the key fact here that I'm struck by, that you I think had to have just hit you in the fact in this case, is there were – with respect to this, whether you call it an investment or a loan of the 150, and the 175 was clearly an investment – you were being offered an exceptional rate of return. With respect to the $150,000 loan, you were bing promised as a secured basis a hundred percent return in a month. You were also being promised at some point, not too far in the future, and I think the impression created was it would be within a year, that you would get another 150 when the condos closed escrow and that you would get two condos, which were worth about a million and a half total.

That is a phenomenal rate of return, and people who were promised that sort of return for just loaning $150,000 have to know that there's something risky about this that they need to look into. And so that plus the fact that there was apparently – you didn't do any due diligence to see whether they owned these condos, where this project was in terms of development, suggests that there isn't reasonable reliance here. You were under an obligation under these particular circumstances to look into these two deals to see whether there was really something behind them. And if you had done that, you would have found that this was not a good organization that you wanted to loan money to.

And that's about it. As I say, I find the second party very easy. There's no way that these loans were not - - or these investments were not exceptionally risky. The deed of trust is a closer question, but I don't think it was intentional with respect to the scope of ownership. You did get a deed of trust. It didn't turn out to be enough to cover the property. You never investigated what the property was worth. Okay."

(TT: Pages 161-168)

## VI. LEGAL ARGUMENT

### A. The Court Issued Its Findings Of Facts And Conclusions Of Law From The Bench Which Is Appropriated Under Federal Rule Of Bankruptcy Procedure 7052.

Federal Rule of Bankruptcy Procedure 7052 which incorporates Federal Rule of Civil Procedure 52 provides as follows:

> "(a) EFFECT.  In all actions tried upon the facts without a jury or with an advisory jury, the Court shall find the facts specially and state its conclusions of law as therein, and judgment shall be entered pursuant to Rule 58; . .Findings of fact, whether based on oral or documentary evidence, should not be set aside unless clearly erroneous, and do regard shall be given the opportunity of the trial court to judge credibility witnesses. . . It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open Court following the close of the evidence or appear in an opinion or memorandum of decision filed in Court."

There is no requirement that the Court make written findings and comments on the record may be sufficiently explicit if they make clear reference to the facts established by the evidence and provide clear and complete understanding of the basis for the ruling. *In re Leavitt*, 171 F.3d. 1219 (9th Cir. 1999).

As set forth above, Judge Carlson made his findings of facts and conclusions of law from the bench.  As set forth in the trial transcript, the Court referenced specific facts and law sufficient to find in favor of the Defendant.  There is nothing improper about the Court not issuing a written ruling and as such, the Court's findings of facts and conclusions of law from the bench are sufficient under Federal Rule of Bankruptcy Procedure 7052.

### B. There Is No Liability Under 11 U.S.C. § 523(a)(2)(A) Because There Was No Misrepresentation By Appellee.

The five (5) elements, each of which a creditor must prove by a preponderance of the evidence to establish liability under 11 U.S.C. § 523(a)(2)(A) are: (1) misrepresentation; fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damaged to creditor proximately caused by its reliance and the debtor's statement or conduct.  In re Slyman, 234 F.3d 1081 (9th Cir. 2000).

**Kornfield, Paul & Nyberg, P.C.**
1999 Harrison Street, Suite 2675
Oakland, California 94612-3525
(510) 763-1000
FAX (510) 273-8669

Appellant argued that Appellee misrepresented to Appellant his interests in his residence the security for the loan. The argument is that by titling the deed of trust "(A) married man, as his sole and separate property" he represented to the Appellant that he owned the entire property, when in fact it was co-owned with his wife. It is undisputed that there was no expressed representation to the Appellant that he owned the property outright or that he was conveying to her deed of trust and the entire property. In fact, the language used by the Appellee was appropriate under applicable law in that the only way he can transfer his interest is by using the language. Appellee was not in the position to transfer to his wife interest in the property since it was co-owned property and he made no representation that he would. Finally, Appellee never represented that the security would be sufficient to pay the entire loan.

As such, without a finding of a misrepresentation of fact as to the deed of trust, no liability under 11 U.S.C. § 523(a)(2)(A) can be found.

### C. There Is No Liability Under 11 U.S.C. § 523(a)(2)(A) Because The Appellant Did Not Reasonably Rely On The Representations Regarding The $150,000 Loan.

Pursuant to the *Field v. Mans*, the Appellant must show that she justifiably relied on the representations (to the extent representation were made) in order to establish the fourth element in 11 U.S.C. § 523(a)(2)(A). In its findings of facts and conclusions of law, the Court went through the *Field v. Mans,* analysis and found that the Appellant, as an educated individual experienced in real estate, had an affirmative obligation to investigate the transactions based on the extraordinary return (13,000%) and the fact that these were being proposed as secured transactions. The Appellant did not perform due diligence in light of these extraordinary facts and as such, she did not justifiable rely on the representation that there would be return of these loans from specific projects. Incidentally, there was no factual finding by the Court that the Appellee made any representation as to the return on these investments.

As set forth above, once the Court found that the Appellant could not meet one element of 11 U.S.C. § 523(a)(2)(A), the Court disregarded the other elements and ruled in favor of the Defendant. Appellant has not addressed these to critical findings of the trial court and is instead decided to

Kornfield, Paul & Nyberg, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612-3525
(510) 763-1000
FAX (510) 273-8669

1 argue issues that were not even raised at the trial nor were relied on the Court in making its ruling
2 for the Defendant.

3 **VII.   CONCLUSION**

4     Based on the foregoing, the Appellee requests that this Court confirm the judgment of the
5 trial court.

7 Dated:  December 27, 2007                        KORNFIELD, PAUL & NYBERG, P.C.

9                                           By: Chris D. Kuhner   /s/
10                                               (Bar No. 173291)
                                              Attorneys for Defendant/Appellee Pros Rivera

**Kornfield, Paul & Nyberg, P.C.**
1999 Harrison Street, Suite 2675
Oakland, California 94612-3525
(510) 763-1000
FAX (510) 273-8669

# DECLARATION OF SERVICE

I, the undersigned, declare:

I am employed in the City of Oakland, County of Alameda, California. I am over the age of 18 years and not a party to this action. My business address is 1999 Harrison Street, Suite 2675, Oakland, California 94612.

I am readily familiar with the business practices of my employer, Kornfield, Paul & Nyberg, P.C., for the collection and processing of correspondence for mailing with the United States Postal Service and that correspondence is deposited with the United States Postal Service that same day in the ordinary course of business.

On December 27, 2007, I served the following document(s):

**APPELLEE'S RESPONSIVE BRIEF**

| | |
|---|---|
| Willie E. Phillips | Attn: Judge Thomas E. Carlson |
| Law Offices of Willie E. Phillips | United States Bankruptcy Court |
| 484 Lake Park Avenue, #335 | P.O. Box 7341 |
| Oakland, CA 94610 | San Francisco, CA 94120-7341 |
| Facsimile No. 510-451-2235 | |

_____ by emailing said document to the persons listed above, to their email addresses also listed above, in Adobe Acrobat, Word, or WordPerfect.

\_\_\_x\_\_\_\_ by placing copies of said document(s) in sealed envelope(s) and placed such envelope(s) for collection and mailing at my employer's office following ordinary business practices, addressed to the addressee(s) designated.

\_\_\_x\_\_\_\_ by facsimile transmission. I transmitted copies of the referenced document(s) via facsimile to the FAX number(s) of the addressee(s) designated above. Documents so processed are sent through the facsimile machine in our office and received simultaneously at their destination.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of December, 2007 at Oakland, California.

                                          Gail Aviles /s/