Willie E. Phillips, #56009
LAW OFFICE OF WILLIE E. PHILLIPS
484 Lake Park Avenue, #335
Oakland, CA 94610

Tel: (510) 451-2222
Fax: (510) 451-2235

Attorney for Appellant/Creditor/Plaintiff Cherie Ivey

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA (San Francisco)

| | |
|---|---|
| **In Re:**<br><br>**PROS RIVERA,**<br><br>          **Debtor,** | **Civil No.:  CV 07-04333PJH** |
| **CHERIE IVEY,**<br><br>          **Plaintiff/Appellant,**<br>**vs.**<br>**PROS RIVERA,**<br><br>          **Defendant/Appellee.** | **Bankruptcy No: 05-32090 TEC**<br>**Adversary Proceeding No: 05-3441** |

## APPELLANT'S REPLY TO APPELLEE'S RESPONSIVE BRIEF

1

## TABLE OF CONTENTS

I.    INTRODUCTION

II.   THE STANDARD FOR ADEQUACY OF FACTUAL FINDINGS OF FACTS AND
      CONCLUSIONS OF LAW AS FOUND IN THE CASE <u>IN RE LEAVITT</u>, 171 F.3d,
      1219 (9TH Cir. 1999) THAT IS USED BY THE NINTH CIRCUIT HAS NOT BEEN
      MET.

III.  THE FIVE (5) ELEMENTS THAT THE CREDITOR/APPELLANT CHERIE IVEY
      MUST PROVE BY A PROPONDERANCE OF THE EVIDENCE TO ESTABLISH
      LIABILITY OF THE DEBTOR/APPELLEE UNDER 11 U.S.C. 523 (a) (2) (A) WERE
      ESTABLISHED AT TRIAL, BUT JUDGE THOMAS E. CARLSON FAILED TO
      APPLY THE EVIDENCE TO THE DEFENDANT/APPELLEE'S CONDUCT

IV.   ARGUMENT

      A.    Appellee's Presentation of The Full Text Of Bankruptcy Judge Thomas E.
            Carlson's Statements At The Conclusion Of The Trial Provides Verification That The
            Judge Erred In Not Applying The Testimony And Documentary Evidence Presented At
            Trial To Defendant/Appellee's Behavior Individually And As President To Find That
            He Committed Fraud And The Appellee's Debt Is Non-Dischargeable Under 11 U.S.C.
            Section 523 (a)(2)(A)

      B.    The Creditor/Appellant Reasonably Relied On Con Men Who Provided A Great
            Deal Of Paperwork, Professional Experience And Expensive Cars Evidencing Success
            At What They Said They Were Doing, But Judge Carlson Failed To Apply This
            Evidence In His Statement At The End Of The Trial As It Related To The Fraudulent
            Behavior Of The Debtor/Appellee

V.    CONCLUSION

1

## **TABLE OF AUTHORITIES**

2

**RULES AND CODES**

3

11 U.S.C. 523 (a) (2) (A)                                    8, 12, 13, 15

4

Federal Rule of Bankruptcy Procedure 7052                    15

5

6

**FEDERAL CASES**

7

In re Leavitt, 171 F.3d 1219, (9th Cir. 1999)              6, 7

8

9

In re Parker, 139 F.3d 668, 670 (9th Cir. 1998) Cert. Denied    6

10

McClellan Federal Union v. Parker, 119 S. Ct 592 (1998)      6

11

In re Kim, 130 F.3d 863, 865 (9th Cir. 1997)               6

12

In re Bradford, 112 B.R. 347 (9th Cir. BAP 1990)           6

13

14

Louie v. United States, 776 F.2d 819 (9th Cir. 1985)       6

15

United States v. Hemmen, 51 F.3d 883 (9th Cir. 1995)       6

16

Kanarek v. Hatch, 827 F.2d 1389 (9th Cir. 1987)            6

17

18

In re Slyman, 234 F.2d 1081 (9th Cir. 2000)                6

19

Field v. Mans, 516 U.S. 59, 116 S. Ct. 437 (1995)            7, 12

20

Holub v. First National Bank, United States Court of Appeals (5th Cir.)    7, 12

21

22

23

24

25

26

27

28

29

30

Appellant's Reply to Appellee's Responsive Brief - No. 07-04333 PJH

# I. __INTRODUCTION__

Appellee/Debtor Rivera in his <u>Statement of the Case</u> acknowledges that the evidence verifies that Titan Endeavors, Inc. was incorporated in the State of Nevada on April 17, 2003. It was started by Jerry Diggs, Jr. who made himself Chairman of the Board. On May 9, 2003 the Debtor/Appellee Pros Rivera signed an Employment Contract to be the President of the Corporation for $5,000.00 per month with further increases written into his Contract. This Employment commenced three (3) weeks after incorporation of Titan Endeavors, Inc.

The testimony and documents presented at Trial verified that the Debtor/Appellee Rivera was given some shares of stock upon signing his Employment Contract, for which he did not have to pay any money. Debtor Rivera was the sole shareholder of Titan Endeavors, Inc. The Corporation was never capitalized. No shares of stock of the Corporation were ever purchased, issued and paid for by anyone.

The testimony of Debtor Rivera and Bank Statements entered into case evidence showed that the money of the Corporation went into a Bank America Account of the Corporation. The only signature on the account was Debtor/Appellee Rivera from 2003 to July 2005. The $150,000.00 he solicited from Creditor/Appellant Ivey was deposited into the Bank of America account and disbursed in checks in its entirety on the signature of Appellee Rivera. None of the money was put into the project for which it was solicited.

In the <u>Statement of the Case</u> in Appellee's Reply Brief on page 3, Lines 14-22, Appellee Rivera through his Attorney, acknowledges "At one point, Diggs needed additional funds to continue his scheme." Diggs and Appellee approached Appellant Cherie Ivey and obtained $150,000.00 from her. This was in January 2005, approximately two (2) years after Appellee Rivera began to work with Jerry Diggs and became President of Titan Endeavors, Inc.

1

2

It is clear from the testimony of Debtor Rivera and Documentary Evidence presented at Trial, Appellee Rivera was aware that the entire venture was a fraudulent "scheme".

3

4

5

6

7

8

9

Appellee Rivera testified that none of the $150,000.00 solicited from Appellant Ivey and deposited in the Bank of America account was every used for or invested in the San Mateo Project for which it was solicited and was never repaid in the thirty (30) days promised. Appellee Rivera testified and the Bank Statements verified that Appellee Rivera signed each check that disbursed the $150,000.00 received from Creditor/Appellant Cherie Ivey.

10

11

12

13

14

15

16

17

Jerry Diggs died on January 25, 2007. Appellee Rivera now seeks to place all blame for his fraudulent acts on the now dead Jerry Diggs and portray himself as the victim. It should be noted that Appellee Rivera testified in Open Court and in his Deposition that he had more than seventeen (17) years experience as a Real Estate agent or Broker and at least that many years in Project management experience. He also testified that he has a Masters Degree in Business Administration. He seeks to portray himself as naïve and being duped by Jerry Diggs.

18

19

20

21

22

23

24

25

26

27

28

Yet, Appellee Rivera seeks to portray Cherie Ivey as failing to use "due diligence" in investigating his fraudulent scheme and therefore the $150,000.00 and the $175,000.00 that she invested in his and Diggs fraudulent schemes should be declared non-dischargeable. Appellant Cherie Ivey is a very unsophisticated purchaser of real property. She inherited some real property upon the death of her father and mother. She has purchased only two (2) residential properties in her entire life and that was with the assistance of a Real Estate broker. She is merely a High School Principal who was duped and defrauded by a very knowledgeable real estate con artist, who is an engineer and real estate developer as verified by documentary evidence, his testimony in Court and in the Deposition of Appellee Rivera.

29

30

## II.  THE STANDARD FOR ADEQUACY OF FACTUAL FINDINGS AS FOUND IN THE CASE IN RE LEAVITT, 171 F.3d, 1219 (9TH Cir. 1999) AS USED BY THE NINTH CIRCUIT HAS NOT BEEN MET.

The standard for adequacy of factual findings in the Ninth Circuit is whether they are explicit enough on the ultimate issues to give the Appellate Court a clear understanding of the basis of the decision, and to enable it to determine the grounds on which the Trial Court reached its decision. The Appellate Court may affirm on any ground supported by the record.

This District Court reviews the conclusions of law of the Bankruptcy Court De Novo and its factual findings for clear error. In re Parker, 139 F.3d 668, 670 (9th Cir. 1998). Cert. denied, McClellan Federal Union v. Parker, 119 S. Ct. 592 (1998); In re Kim, 130 F, 3d 863, 865 (9th Cir. 1997).

The standard for adequacy of factual findings in the Ninth Circuit is "whether they are explicit enough on the ultimate issues to give the Appellate Court a clear understanding of the basis of the decision and to enable it to determine the ground on which the Trial Court reached its decision." In re Bradford, 112 B.R. 347, 353 (9th Cir. BAP 1990) (Citing Louie v. United State, 776 F. 2d 819, 822-23 (9th Cir. 1985). The Appellate Court may affirm the lower court on any ground fairly supported by the record. United States v. Hemmen, 51 F.3d 883, 891 (9th Cir. 1995). Remand is not required when express findings are not made, if "a complete understanding of the issues may be had (from the record) without the aid of separate findings." Kanarek v. Hatch, 827 f.2d 1389, 1391 (9th Cir. 1987).

In the Leavitt case 171 F.3d 1219 (9th Cir. 1999) the Debtor Leavitt was the Appellant who had omitted assets in his Schedules and had other inaccuracies. Certain of the Debtor Leavitt's debts were found to be Non-Dischargeable. The Bankruptcy Court ruling was Appealed by the

Debtor. "The BAP affirmed holding that the evidence supported the Bankruptcy Court's finding of bad faith, and the Courts oral finding were sufficiently specified." Leavitt Appealed to the United States Court of Appeals for the Ninth Circuit in 1999.

The Creditor/Appellant Cherie Ivey agrees with this ruling in the <u>Leavitt</u> case. The facts are similar. The Debtor Pros Rivera was President of a Corporation created in April 2003 for the purpose of defrauding individuals out of their money. After getting $150,000.00 in January 2005 and $175,000.00 in February 2005 from Creditor/Appellant Cherie Ivey, the Debtor Rivera filed for Bankruptcy in the San Francisco Bankruptcy Court IN July 2005. The Debtor Rivera failed to list the $150,000.00 and the $175,000.00 owed to the Creditor/Appellant Cherie Ivey in his Schedules. But, unlike the Bankruptcy Judge and BAP in Leavitt case, Judge Thomas E. Carlson made no Findings regarding fraud by the Debtor Rivera.

The Bankruptcy Court representatives discovered the Deed of Trust for $300,000.00 in favor of the Creditor/Appellant and she was contacted. A Complaint Objecting to Discharge of these Debts was filed. The Bankruptcy Court Judge failed to provide an oral or written analysis of his behavior, his testimony, his experience, and documentary evidence as it applies to the Debtor Pros Rivera to constitute a proper Findings of Fact and Conclusions of Law regarding fraud and Non-dischargeability.

The standard set forth in <u>Field v. Mans,</u> 516 U.S. 59, 116 S. Ct. 437 (1995) was applied in the <u>Leavitt</u> case in the Ninth Circuit and in the <u>Holub</u> case in the Fifth Circuit, but were not applied to the Debtor Pros Rivera in the present case. Such an analysis will clearly show that the Debtor is experienced in real estate and management and was President of a Corporation Titan Endeavors, Inc. that participated in a "scheme" to defraud the Creditor/Appellant Cherie Ivey. The evidence and testimony showed that the Creditor/Appellant was a Principal of an

Elementary School who was unsophisticated person in real estate who "justifiably" relied on the representations of the Debtor and his associates Diggs and others in his organization. There were no Finding of Fact and Conclusions of Law applied to the Debtor Pros Rivera.

### III. THE FIVE (5) ELEMENTS THAT THE CREDITOR/APPELLANT CHERIE IVEY MUST PROVE BY A PROPONDERANCE OF THE EVIDENCE TO ESTABLISH THE DEBTOR'S NON-DISCHARGEABLITY UNDER 11 U.S.C. 523 (a) (2) (A) WERE ESTABLISHED AT TRIAL, BUT JUDGE THOMAS E. CARLSON FAILED TO APPLY THE EVIDENCE TO THE DEFENDANT/APPELLEE'S CONDUCT

The five (5) elements, each of which a creditor must prove by a preponderance of the evidence to establish liability under 11 U.S.C. § 523 (a)(2)(A) are: (1) misrepresentation; fraudulent omission or deceptive conduct by the Debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the Debtor's statement or conduct; and (5) damaged to creditor proximately caused by its reliance and the Debtor's statement or conduct. In re Slyman, 234 F.3d 1081 (9th Cir. 2000).

The Plaintiff gave to the Defendant Rivera $150,000.00 on January 27, 2005 in exchange for an Agreement to pay $300,000.00 in thirty (30) days on February 26, 2005 from Escrow Number 54111644-501 JR held at Commonwealth Land Title company, located at 530 El Camino Real, Suite A, San Carlos, CA 94070 for property being purchased by the Debtor Rivera which was located at 1309 & 1355 El Camino Real, Millbrae, CA 94030. In addition, the Defendant Rivera promised and agreed to build condominiums on land to be purchased in this Escrow that was to close February 26, 2005 at Commonwealth Land Title Company. The

1   Condominiums were to be built on the site in eight (8) months. Two (2) condominiums valued

2   at $899,000.00 each were to be transferred to Plaintiff after construction was completed.

3
4       The Defendant Rivera further agreed to guarantee the repayment of the $300,000.00 in

5   thirty (30) days by signing a Note in the amount of $300,000.00 secured by a deed of Trust

6   against his property located at 637 Sandy Hook, Foster City, California, County of San Mateo,

7   payable on February 26, 2005.

8
9       The Defendant Pros Rivera testified during his deposition on May 22, 2007 that the verbal

10  agreement was for a Note for $300,000.00 payable in thirty (30) days.

11      The Defendant failed to payoff the $300,000.00 on February 26, 2005 as agreed. Defendant

12
13  Pros Rivera knew at the time he signed the Note and Deed of Trust that he did not have the

14  intent or ability to pay off the $300,000.00 in thirty (30) days from neither the sale of or

15  refinance of the Foster City, property nor he closure of the Commonwealth Land Title

16
17  Company Escrow that was specified in the Agreement with the Plaintiff.

18      The Defendant Rivera further failed to close the Escrow opened at the Commonwealth

19  Land Title Company and develop a condominium project, nor transfer of the two (2)

20  $899,000.00 condominiums to the Plaintiff Ivey as agreed.

21
22      Because of the above assurances and promises, the Plaintiff Cherie Ivey agreed to advance

23  the $150,000.00. On January 27, 2005 the Defendant Pros Rivera and his associate Jerry Diggs

24  and Plaintiff Cherie Ivey met at the Fruitvale office location of Bank of America. The

25  Defendant Pros Rivera provided the Plaintiff Cherie Ivey with "Note secured by Deed of Trust"

26
27  dated January 26, 2005 in the amount of $300,000.00 payable on February 26, 2005 and

28  secured by his property located at 637 Sandy Hook Ct., Foster City, CA 94404. (June 26, 2007

29  Trial Exhibit No. 6). The Defendant also provided at that meeting at Bank of America a Deed

30

of Trust secured by property located at 637 Sandy Hook Ct., Foster City, CA 94404, which shows ownership as **"Pros Robert Rivera, a married man as his sole and separate property"** and was notarized with his signature. (June 26, 2007 Trial Exhibit No. 7).

The Plaintiff was also given other documentation to verify the existence of the Nevada Corporation Titan Endeavors, Inc, its' officers, and "Pros Rivera, as CEO/President" as of May 30, 2003 (June 26, 2007 Trial Exhibit No. 9). Of great importance the Plaintiff also provided proof of a Escrow No. 54111644-501 JR dated December 22, 2004 being open at Commonwealth Land and Title Company in San Carlos, California with an "Estimated" Buyer/Borrowers Closing Statement with "Pros Rivera" listed a "Buyer/Borrower" of the property located at 1309 and 1355 El Camino Real, Millbrae, CA 94030 with Escrow amount listed as $17,575.000.00 (Trial Exhibit No. 10).

His Trial testimony disclosed that he did not put any money into the Escrow of his own nor the Plaintiff's money. The Escrow was a show to solicit the money. The Defendant also provided a Powerhouse Mortgage and Funding Co. LLC letter dated November 17, 2004 verifying an offer to purchaser and sale of the property and financing terms and others (Trial Exhibits No. 7, 12, and 13) The Defendant did not follow up on this project nor invested any money. The purpose of all of the information provided including stating that the Foster City property was his "sole and separate property," was to defraud the Plaintiff Cherie Ivey out of her money.

The Plaintiff was duped by the Defendant Pros Rivera and his Associates on January 27, 2005 and gave Defendant Pros Rivera a Bank of America Cashiers Check No. 410548332 in the amount of $150,000.00 (Trial Exhibit No. 14).

The Defendant/Debtor filed a Chapter 11 Bankruptcy on July 5, 2005, but failed to list the Plaintiff Cherie Ivey as a Creditor.

He later filed a Motion and sought an Order citing the fifty (50%) Claim of Interest of the wife of the Debtor Pros Rivera. Even though the $300,000.00 Deed of Trust that was given to Plaintiff Cherie Ivey stated that Defendant Pros Rivera held title to the Foster City property as "a married man as his sole and separate property", he made the Motion in Bankruptcy Court insisting that his wife Erlinda T. Rivera had a fifty (50%) percent. She did not make the Motion. The Debtor did. The Court ruled in favor of her fifty (50%) interest as recognized in the Courts May 22, 2006 Bankruptcy Court Order (Trial Exhibit No. 27).  The Deed of Trust given by the Defendant/Debtor Pros Rivera on January 27, 2005 to Plaintiff Cherie Ivey fraudulently asserted a one Hundred (100%) percent ownership interest, not fifty (50%) percent interest. The unpaid balance should be ruled a Non-dischargeable amount under Bankruptcy Rule 523 (a) (2) (A).

The Plaintiff/Creditor Cherie Ivey only received from the sale of Foster City the sum of $78,176.96. The balance that was to paid of the Plaintiff Cherie Ivey's Claim of $313,069.80 was allowed by Judge Carlson to be submitted as an Unsecured Claim pursuant to the May 22, 2006 Order of the Bankruptcy Court (Trial Exhibit No. 28).

The Debtor Pros Rivera testified in the trial that none of the $150,000.00 received from Cherie Ivey was put into the Escrow for which it was solicited by him from the Plaintiff Cherie Ivey. He testified that he was the only signature on the Bank of America account where the $150,000.00 was deposited and that none of the money went into the escrow at the Commonwealth Title Company. (Trial Transcript, p. 43, 2-14.).

When Plaintiff Cherie Ivey met with Defendant Pros Rivera at Bank of America on Fruitvale Avenue in Oakland, CA on January 27, 2007, a packet of information regarding other investment opportunities was provided to her. (Trial Transcript, p. 51, 21-25; and p. 52, 1-14). She was instructed to continue "negotiating or communicating with Jerry Diggs", the Chairman of the Board of Titan Endeavors, Inc. regarding investing in other projects (Trial Transcript, p. 52, 21-25; and p. 53, 1-20).

In February 2005, the Debtor Pros Rivera was out of the country in the Philippines, to review possible investment projects and due to the illness of his mother. During February 25 through March 1, 2005, Titan Endeavors opened a Bank account to receive the $175,000.00 that was solicited as an investment from Plaintiff Cherie Ivey. (Trial Transcript, p. 55, 25; and p. 56, 1-2). None of the money was invested in the project.

The Supreme Court outlined the standard in <u>Field v. Man</u>, 516 U.S. 59, 116 S. Ct. 437 (1995) and stated that the person defrauded must have "justifiably relied" on the representations made by person or company that made the claims. In addition, the other elements of 11 U.S.C. (a)(2)(A) must also be found. As in <u>Holub v. First National Bank</u>, 516 U.S. 59, 116 S. Ct. 437 (1995), there has to be an analysis and finding of facts regarding the conduct of the Debtor to see fit her Debtor committed a fraud. The facts and circumstances before the Court of the Debtors behavior is the starting point before Court determines whether the person defrauded "justifiably relied". The facts are clear that there was intent to defraud and that the Debtor "justifiably relied" on the promise made.

## IV. ARGUMENT

**A**. **<u>Appellee's Presentation of The Full Text Of Bankruptcy Judge Thomas E. Carlson's Statements At The Conclusion Of The Trial Provides Verification That The Judge Erred</u>**

**In Not Applying The Testimony And Documentary Evidence Presented At Trial To Defendant/Appellee's Behavior Individually And As President To Find That He Committed Fraud And The Appellee's Debt Is Non-Dischargeable Under 11 U.S.C. Section 523 (a)(2)(A)**

Judge Carlson had a verbal exchange regarding the issue of the need to pierce the Corporate veil to find the Debtor/Defendant personally liable under 11 U.S.C. § 523 (a) (2) (A). Judge Carlson ruled as follows:

"THE COURT: You don't have to prove that – you don't have to pierce the corporate veil to prevail here. What you have to do is prove all the elements of 523 (a) (2). Okay? (Trial Transcript, p. 13, 17-20)"

Judge Carlson stated when he stated his ruling, that "There are five elements that must be --depending on how you break the up --that have to be established under 523 (a) (2) (A) to establish the non-dischargeability of an obligation based on fraud." (Trial Transcript, p 161, 19-22). The Judge further stated "new for--, I don't need to make findings under all of these sections. I'm going to find for the Defendant here, and the transaction breaks down in a couple different ways, into two basic sections. The most interesting and difficult part has to do with the Deed of Trust, and then the amount that might have been paid through the Deed of Trust, and then the second one has to do with other methods of repayment, other promises to repay." (Trial Transcript, p 161, 9-16)

After some further rambling that did not speak to the evidence regarding the many years of Debtor/Appellee's real estate, management experience, and educational background of the Debtor/Defendant who was accused of fraud, Judge Carlson states, "I will do the Judgment. I will just incorporate those finding." (Trial Transcript, p 168, 14-15).

Judge Carlson stated that he would "do the judgment; I will just incorporate these findings." (Trial Transcript p 168, 14-15). The Judge did not. The Defendant's Attorney Kuhner stated that "There's no finding one way or the other." The Judge states that there was no finding,"… except with respect to the Deed of Trust issue." (Trial Transcript. p. 169, 3-7). No Finding of Fact nor Conclusion of Law were included in the Judgment After the Trial that was dated and Entered on August 7, 2007 in this case.

**B. <u>The Creditor/Appellant Reasonably Relied On Con Men Who Provided A Great Deal Of Paperwork, Professional Experience And Expensive Cars Evidencing Success At What They Said They Were Doing, But Judge Carlson Failed To Apply This Evidence In His Statement At The End Of The Trial As It Related To The Fraudulent Behavior Of The Debtor/Appellee</u>**

The money of the Plaintiff/Appellant Cherie Ivey was used by the Defendant Pros Rivera to lease luxury cars and to rent expensive property in Hillsborough. The Defendant/Appellee Rivera leased the expensive property in Hillsborough in his own name on a one year Lease and was eventually evicted (Trial Transcript p. 71, 1-17)

In addition, the Debtor Pros Rivera leased an Escalade, Rolls Royce and A Volkswagen SUV. The autos were used to impress investors (Trial Transcript, p. 71, 18-20). The Debtor testified that a Judgment was entered regarding the automobiles in the amount of $102,000.00 against the corporation and the Debtor personally (Trial Transcript, p. 72, 15-25; p. 73, 1-10; Trial Exhibit No. 29).

The Defendant/Appellee Pros Rivera, the President of Titan Endeavors, Inc., is an experienced Real Estate Agent, Real Estate Corporate Manager and educated. None of his

actions in the transactions were a mistake nor done out of ignorance. They were done to defraud the Creditor/Appellant Cherie Ivey.

The Defendant Pros Rivera has a Bachelors Degree from De La Salle University and a Masters n Business Administration from Golden gate University. (May 22, 2007 Deposition of Pros Rivera, p. 7, 7). Because of his management experience, the Debtor was made the President and CEO of the Nevada Corporation Titan Endeavors, Inc. on May 30, 2003. (Deposition of Pros Rivera, p. 17, 18-25). As of May 2003 the Debtor had at least ten (10) years experience handling 3 to 15 real estate transactions a year (Deposition of Pros Rivera p. 18, 7-17); Trial Transcript, p. 19, 14-20). The Defendant worked in management with Flour engineers (Deposition of Pros Rivera p. 20, 20-22) and other companies.

The Plaintiff/Appellant at the time invested her retirement money in the amount of $325,000.00. She was Principal of an Elementary School in Oakland. She had bought only residential properties and was planning to retire. She was not an experienced investor.

### V.  CONCLUSION

The statements made from the bench by Judge Thomas E. Carlson are not adequate to constitute appropriate findings of fact under Federal Rule of Bankruptcy Procedure 7052.

There were clearly misrepresentations and deception made by the Debtor/Appellee and his associates that were presented as evidence at trial, but were never referenced by Judge Carlson in his Statement from the bench that would satisfy the requirements of an adequate findings of fact and conclusions of law.

This Court has the power to review the facts De Novo and make its own Findings that there was fraud and the amount owed to the Appellant/Creditor Cherie Ivey by the Appellee/Debtor Pros Rivera is Non-Dischargeable under 11 U.S.C. 523 (a)(2)(A).

The Plaintiff/Appellant Cherie Ivey and her Attorney are only seeking a just and fair review and a proper decision based on the facts of the case. The relationship between the Judge and the lawyer or law firm should not influence the making of a just decision in a case. We believe a De Novo review on Appeal will result in a fair and just decision.

Date: December 7, 2007


　　　　　　　　　　　　　　 _/S/ Willie E. Phillips_____

　　　　　　　　　　　　　　Willie E. Phillips, Attorney for Appellant Cherie Ivey

Appellant's Reply to Appellee's Responsive Brief - No. 07-04333 PJH